IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY LOPEZ,<br><br>   *Plaintiff*,<br><br> v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br><br>   *Defendants*. | CIVIL ACTION<br>No. 13-6571 |

**PAPPERT, J.**                               July 5, 2017

<u>**MEMORANDUM**</u>

  Jerry Lopez, a *pro se* inmate, sued the City of Philadelphia, former Philadelphia Prison System Commissioner Louis Giorla, Curran-Fromhold Correctional Facility Warden John Delaney, Deputy Warden Clyde Gainey, Deputy Warden Gerald May, Deputy Warden Frederick Abellos, and the Deputy Warden of Administration. He alleges the Defendants violated his constitutional rights by housing him in a three-person cell that was designed for two people. The Defendants filed a motion to dismiss Lopez's Amended Complaint. The Court denies the motion.

**I.**

  Lopez was arrested in Philadelphia and placed in the custody of the Philadelphia Prison System on May 31, 2008. (Am. Compl. ¶ 17, ECF No. 6.) He remained at the Curran-Fromhold Correctional Facility ("CFCF") until November of 2012, when he was transferred to a commonwealth prison. (*Id.*) Through almost his entire time at CFCF, Lopez was housed in over-crowded cells. He was frequently housed with two other inmates in a cell designed for two people, an arrangement known as "triple-celling." (*Id.*) In those cells, Lopez was forced to sleep on a "boat"—a plastic tray used as a

1

bed—near the cell's toilet. (*Id.*) Lopez was also housed in a windowless multipurpose room with four other inmates for seven consecutive months of his stay at CFCF. (*Id.* ¶¶ 18, 25.) He was moved to non-overcrowded cells only "once-in-a-while," something he contends was done merely to create "the illusion of not being housed illegally." (*Id.* 18.) Lopez was also "locked down" in his cell for weeks at a time due to understaffing at CFCF. (*Id.* ¶ 22.) Because of the chronic overcrowding at the prison, Lopez was unable to shower for up to a week at a time. (*Id.* ¶¶ 22, 34.) The combined effect of these conditions was to exacerbate Lopez's existing seizures and depression. (*Id.* ¶ 28.)

The City, Giorla, Delaney, Gainey, May and Abellos moved to dismiss Lopez's claims on February 10, 2015. (ECF No. 10.) Lopez filed his response on March 11, 2015. (ECF No. 12.) The case was initially before Judge Shapiro, who referred Lopez to the Court's prisoner civil rights panel for possible appointment of counsel and placed the case in suspense pending the panel's decision. (ECF No. 13.) The case was then transferred twice: first to Judge Goldberg on August 1, 2016, (ECF No. 17), and again to this Court on December 12, 2016, (ECF No. 18). The case was removed from suspense on March 16, 2017. (ECF No. 19.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must

2

provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and

3

hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

Finally, because Lopez filed his complaint *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers"). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)).

## III.

Lopez asserts claims under § 1983 for violations of the First, Fifth, Eighth, Ninth and Fourteenth Amendments. (Am. Compl. ¶ 15.) To state a claim under § 1983, Lopez must allege that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also allege that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" to those rights. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

4

The Defendants move to dismiss on two grounds. They argue that Lopez's municipal liability claim against the City merely restates the elements of *Monell* liability and therefore must be dismissed. They also contend that Lopez inadequately alleges the personal involvement of the Defendants. Neither argument is compelling.

**A.**

The Court analyzes Lopez's claims against the City under the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658).

A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrew*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480). "[A] policy or custom may also exist where the policymaker has failed to act affirmatively at all,

5

though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (quotation omitted).

A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* In other words, custom "requires proof of knowledge and acquiescence by the decisionmaker." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

The Defendants do not directly contend that Lopez failed to allege an underlying constitutional violation, something Lopez has sufficiently done.[1] Pretrial detainees' "triple-celling" claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 534 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 166–67 (3d Cir. 2005). Conditions of confinement are unconstitutional if the

---

[1] It is unclear whether Lopez was a pretrial detainee or a convicted prisoner during the time he was confined. It is therefore unclear whether Lopez enjoyed the protection of the Eighth Amendment's cruel and unusual punishment clause or the Fourteenth Amendment's due process clause. While the bounds of the Fourteenth Amendment are not clearly defined in this context, the Fourteenth Amendment provides *at least* as much protection as the Eighth Amendment when evaluating conditions of confinement. *See Bell v. Wolfish,* 441 U.S. 520, 545 (1979) ("[P]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); *Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007) ("[T]he protections due to sentenced inmates provide a floor for what pretrial detainees may expect").

condition is: (1) the result of an express intent to punish or (2) not rationally related to a legitimate government purpose. *Bell*, 441 U.S. at 538–39. Because triple-celling is not *per se* unconstitutional, courts must look to the "totality of the conditions" of the specific prison at issue to determine whether triple celling is rationally related to the legitimate government purpose of managing an overcrowded prison. *Hubbard*, 538 F.3d at 233. This analysis depends on the "size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise." *Id.* (quoting *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650 (8th Cir. 1996)).

Sentenced prisoners claims, meanwhile, are evaluated under the Eighth Amendment. Violations of the Eighth Amendment require both objective and subjective components. "As to the 'objective component,' the court must consider 'whether these conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Grohs v. Santiago*, No. 13-3877, 2014 WL 4657116, at *4 (D.N.J. Sept. 17, 2014) (quoting *Hubbard v. Taylor*, 538 F.3d 299, at 233 (3d Cir. 2008) (*Hubbard II*). The analysis also looks to the totality of the circumstances and whether they have somehow harmed the prisoner. *Id.* at *6. The subjective component considers whether the officials acted with a "sufficiently culpable state of mind." *Id.* "Thus, the official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference." *Daniels v. Taylor*, No. 13-5510, 2014 WL 3955372, at *4 (D.N.J. Aug. 13, 2014) (quotations omitted)).

7

Lopez alleges a policy of placing three inmates in cells that were designed to hold two people. He further alleges that he was forced to sleep on a "boat" near the cell's toilet, and was locked down in these cramped conditions for weeks at a time. (Compl. ¶¶ 18, 22.) Also as a result of overcrowding and understaffing at the prison, Lopez and other inmates were not allowed to shower for up to a week at a time. (*Id.* ¶ 34.) These facts, construed liberally and taken as true, provide enough detail about the circumstances in the prison to survive a motion to dismiss. It is plausible that taken as a whole, these conditions violated Lopez's constitutional rights under the Fourteenth or Eighth Amendments. *See, e.g.*, *Peele v. Delaney*, No. 12-4877, 2017 WL 467347, at *4 (E.D. Pa. Feb. 3, 2017) (denying motion to dismiss CFCF inmate's triple celling claim under Section 1983); *Lewis v. Nutter*, No. 16-0528, 2016 WL 7028073, at *3 (E.D. Pa. Nov. 30, 2016) (same); *Pichalskiy v. Nutter*, No. 15–4704, 2016 WL 7018545, at *2 (E.D. Pa. Nov. 30, 2016); *Cain v. Nutter*, No. 15-5524, 2016 WL 7031891, at *3 (E.D. Pa. Dec. 1, 2016); *Petty v. Nutter*, No. 15–3420, 2016 WL 7018538, at *3 (E.D. Pa. Nov. 30, 2016).

Lopez also alleges a policy or custom attributable to the City. Construing his allegations liberally, he contends the City created and maintained policies that created unconstitutional risks by housing inmates in overcrowded cells and holding them in those cells for weeks on end. He also alleges that other inmates suffered from the same or similar circumstances, which could establish a practice or custom. *See* (Am. Compl. ¶¶ 16, 34); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (plaintiff's complaint did not "allege that other inmates suffered similar deprivations . . . that might establish a custom" (citing *Bielevicz*, 915 F.2d at 850 (custom may be proven by showing that a specific course of conduct is "well-settled and

permanent," even if that conduct is not expressly endorsed by a written rule))). Lopez also alleges that the City operates and controls CFCF. *See* (Am. Compl. ¶¶ 42–45).

Finally, Lopez alleges that Deputy Warden Gainey was an official policymaker at CFCF and knew about and acquiesced in the triple-celling policy with deliberate indifference to Lopez's constitutional rights. He alleges that he spoke personally to Gainey at different times throughout his incarceration, and told him about the conditions at the prison. (*Id.* ¶ 38.) Lopez has thus alleged sufficient facts to state a *Monell* claim.

## B.

Giorla, Delaney, Gainey, May and Abellos also move to dismiss Lopez's claims against them for failure to allege their personal involvement. "In order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Lopez can establish that the individual defendants he sued were personally involved by alleging facts under either of two theories: "(1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; [or] (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice, or custom which directly caused the plaintiff's constitutional harm." *Brown v. May*, No. 16-1873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

Under the first theory, a Court "can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case[;] the

knowledge must be actual, not constructive." *Chavarriga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). A plaintiff proceeding under the second theory must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the supervisor had done more than he or she did." *Id.* (quotation omitted). Instead, a plaintiff "must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest a relationship between the identified deficiency of a policy or custom and injury suffered." *Robinson*, 2017 WL 1330507, at *2.

Lopez has alleged sufficient facts to show Gainey, May and Abellos's personal involvement. He claims that he spoke personally to both Gainey and Abellos at different times throughout his incarceration while they made rounds through the prison. (Am. Compl. ¶ 38.) That is sufficient to demonstrate their knowledge of, and acquiescence in, a custom, policy or practice at this stage in the proceedings. *See, e.g.*, *Shaw v. Nutter*, No. 16-1209, 2017 WL 8955848, at *4 (E.D. Pa. Mar. 6, 2017) (finding allegation that prison warden made tours of the prison and spoke with the plaintiff concerning the plaintiff's complaint sufficient to plead knowledge and acquiescence).

Lopez also alleges that Giorla and Delaney, official policymakers, knew about and acquiesced in the policy in deliberate indifference of his constitutional rights. He contends that the pair were responsible for the day-to-day operations of the prisons and thus would have rectified the conditions at CFCF but for their deliberate indifference.

10

His allegations are therefore sufficient to state a claim against them. *Compare, e.g.*, (Am. Compl. ¶¶ 5–6, 53) (alleging Giorla and Delaney were policymakers at CFCF and that Delaney managed the daily operations at the prison), *with Brown v. May*, 2017 WL 2178122, at *2 (dismissing complaint where plaintiff failed to allege defendants were policymakers).

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
